# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THERESA DONNELLY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 5201 |
| | ) | |
| vs. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The Chicago Park District has moved for summary judgment on the three-count complaint of Theresa Donnelly. The motion is granted as to Count II, denied as to Count III and as more fully explained below, further briefing is ordered on Count I.

### INTRODUCTION

#### A.

For many years there have been complaints from the most responsible of quarters about the quality of briefing at all levels of the judicial system. The late Karl Llewellyn recounted how every one of his many law professor friends who became judges told him that "the general run of briefs which has come before his court – with of course many gratifying exceptions – seems to him barely and scrapingly passable, or else inadequate or worse." The Common Law Tradition: Deciding Appeals, 30 (1960). Much to his amazement and some dismay, Professor Llewellyn's own endeavors confirmed the "frequency with which the relevant briefs miss or obscure telling points, choose foreseeably losing ground, or mismanage promising positions." *Id.*

Judge Friendly and Judge Posner have expressed the same views. *See* Friendly, The Common Law Tradition: Deciding Appeals, in Friendly, Benchmarks, 34, 39 (1967); Jeffrey Cole, *Economics of Law: An Interview With Judge Posner*, 22 LITIGATION 23, 31 (Fall 1995). So has Judge Gettleman, who has said that he has seen "some of the most astonishingly incompetent writing imaginable." Robert Gettleman, *We Can Do Better*, 25 LITIGATION 3, 62 (Summer 1999). *See also Alexander v. City of South Bend*, 433 F.3d 550, 552 (7th Cir. 2006)("the parties' attorney have not presented the factual background of this case in a clear and well-organized way; the district court characterized Alexander's pleadings as 'poorly written, convoluted and confusing,' and the same is true of his appellate briefs.").

Underinclusive and inadequate presentations shift the responsibility to the court to do the lawyer's work. That's a risky business, for it requires the judge to be clairvoyant or intuitively to know the contours of the unmade argument. And, it rests on the hope that the judge will explicate the arguments that the briefs have left undeveloped, rather than resorting to the rule that superficial, skeletal, and unsupported arguments will be deemed waived or forfeited. *United States v. Cusimano*, 148 F.3d 824, 828 n.2 (7th Cir. 1998). The hope is, more often than not, vain, for judges are not like pigs hunting for truffles buried in the briefs. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). It is not their responsibility to research and construct the parties' arguments. *United States v. McLee*, – F.3d – (7th Cir. 2006) 2006 WL 240569.[1]

---

[1] There is a necessarily symbiotic relationship between judges and lawyers. The truth, whether one openly admits it or not, is that judicial accuracy for most judges in any given case – and especially over time – is often affected (to some degree) by the quality of the presentations of the lawyers in the case. Justice Brandeis said it best: "A judge rarely performs his functions adequately unless the case before his is adequately presented." *The Living Law*, 10 Ill.L.Rev. 461, 470 (1916). *See also* Holmes, The Law, In Collected Speeches, 16 (1931)( Shall I ask what a court will be, unaided? The law is made by the Bar, even more than by the bench."). *See also Adamson v. California*, 332 U.S. 45, 59 (1946) (Frankfurter, J., concurring). ("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful
(continued...)

In the instant case, the briefing of the Chicago Park District in support of its motion for summary judgment provided, at best, only the most minimal assistance to the court. Indeed, in a number of instances, it was of no help at all, resorting as it did to the "ostrich-like tactic of pretending that potentially dispositive authority [and argument] against [the Park District's] contention[s] d[id ] not exist" – a tactic the Seventh Circuit has said "is as unprofessional as it is pointless." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987); *Fred A. Smith Lumber Company v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988). *See also*, *Smith v. Chicago School Reform Bd. Of Trustees*, 165 F.3d 1142, 1148 (7th Cir. 1999)("The School Board's brief relies heavily on *Stafford*; tellingly, Smith's brief does not mention that case.").

As a consequence of the Chicago Park District's inadequate and disappointing briefing – both its opening and its reply brief – it is impossible to make an informed judgment about Count I, which alleges gender discrimination under Title VII. While it would be permissible simply to deny the motion as it relates to Count I, enough questions appear to be implicated that it would not be institutionally responsible to take that course, which would necessitate a trial where perhaps there should be none. Thus, the defendant is accorded the option of filing an additional brief on Count I only directed to the specific questions discussed at the conclusion of Argument II, *infra*.

## B.

The plaintiff has worked for the Beaches and Pools Department of the Chicago Park District since 1997. She is presently a Natatorium Instructor, having been promoted to that position in December of

---

[1](...continued)
arguments on both sides....").

3

2004. Plaintiff began her tenure with the Park District as a lifeguard, and she was eventually promoted to the position of Natatorium Instructor on an earlier occasion before her career took a turn for the worse for several months in 2002. During that period, plaintiff contends that she was unfairly reprimanded, relieved of her supervisor duties, and transferred to a less desirable work location; all – according to her – because she made numerous requests for more desirable work hours and location and failed to discipline her staff. She claims that the Park District did not take similar action against male life guards who engaged in the same conduct. Plaintiff also claims that the Park District refused her request for family medical leave in September of that year. On July 25, 2003, the plaintiff filed a three-count complaint, alleging that the Park District discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964, breached its contract with her, and violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* The Park District has moved for summary judgment on all three claims. For the following reasons, the Park District's motion is granted as to Count II, but not as to Counts I and III.

## FACTUAL BACKGROUND[2]

As already noted, the plaintiff's troubles began in 2002, when she was supervising five pool locations. At that time, the Park District initiated several new policy directives for its lifeguard staff. (*Defendant's Local Rule 56.1 Statement* ("*Def.St.*"), ¶¶ 11, 13, 19; *Plaintiff's Answer to Def.St.* ("*Pl.Rsp.*"), ¶¶ 11, 13, 19). Plaintiff admittedly disagreed with the policies and voiced her objections at a June 2002 meeting. (*Def.St.* ¶ 20; *Pl.Rsp.* ¶ 20). Several male lifeguards also voiced objections at the

---

[2] The facts of this dispute, as always in summary judgment proceedings, are drawn from the parties' Local Rule 56.1 submissions. *Koszola v. Board of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004)(court is entitled "to decide the motion [for summary judgment] based on the factual record outlined in the [Local Rule 56.1] statements."); *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(court is also entitled to demand "strict compliance" with the local rule)

4

meeting regarding the policy changes. (*Def.St.* ¶ 13; *Pl.Rsp.* ¶ 13; *Plaintiff's Local Rule 56.1 Statement of Facts*, ¶¶ 26-27). The difference, according to the Park District, was that the male lifeguards did not "grandstand" or "get people riled up" the way plaintiff did. (*Def.St.* ¶ 14). Eric Fisher, who was the assistant manager of the Beaches and Pools Department at that time, testified that plaintiff's behavior at the meeting amounted to direct insubordination. (*Def.St.* ¶ 15; *Pl.Rsp.* ¶ 15).

According to the plaintiff, she was told "if you don't like it, there's the door." (*Def.St.* ¶ 11; *Pl.Rsp.* ¶ 11). But the parties agree that Ms. Donnelly was not asked to leave the meeting or disciplined for her remarks. (*Def.St.* ¶ 11; *Pl.Rsp.* ¶ 11). The Park District's brief focuses exclusively on this incident, and its motion for summary judgment on plaintiff's Title VII claim rests on the argument that, because neither the plaintiff nor the male lifeguards were disciplined after the meeting, plaintiff cannot show she was treated differently from similarly situated males. (*Defendant's Memorandum in Support of Its Motion for Summary Judgment*, at 5). In so doing, however, the Park District ignores another incident that plaintiff clearly alleges in her complaint as part of her Title VII claim. The incident, which occurred during the same time frame in the summer of 2002, involved plaintiff's response to a request to discipline two lifeguards under her supervision. (*Complaint*, ¶¶ 10-12).

In regard to this second incident, it is undisputed that plaintiff was reprimanded for failing to adequately discipline two lifeguards working at one of the pools she supervised. (*Def.St.* ¶ 11; *Pl.Rsp.* ¶ 11; *Pl.St.* ¶ 15). She was told to issue written reprimands to the two employees. According to the plaintiff, she issued the reprimands despite her misgivings. (*Pl.St.* ¶ 19; Ex. J, Fisher Dep. at 38). Plaintiff testified that she wrote a reprimand, but also included a "rebuttal," indicating that she did not feel the two lifeguards deserved disciplinary action. (*Pl.St.*, Ex. G, Plaintiff's Dep. at 43). The Park District denies that

5

plaintiff issued the reprimands, but offers no evidence to support its position. (*Defendant's Response to Plaintiff's Local Rule 56.1 Statement* ("*Def.Rsp.*"), ¶ 19).

The testimony of both its Deputy Director of Beaches and Pools, and its Manager of the Beaches and Pools Department, however, both tend to support the plaintiff. Jaime Anderson, the deputy director, explained that, when Mr. Fischer instructed plaintiff to write up the two lifeguards, she attached a letter saying that "she was doing this because Mr. Fischer had seen these employees doing whatever the infraction was." (*Def.St.*, Ex. E., Anderson Dep., at 29). At his deposition, Mr. Fischer admitted that plaintiff did, in fact, write the reprimands, but they included an explanation that she did not agree with the reprimand. (*Def.St.*, Ex. J., Fischer Dep., at 38-40). The Park District does not discuss this testimony anywhere in its materials, however, because it does not address this incident as a part of plaintiff's Title VII claim.

Shortly thereafter, the Park District stripped the plaintiff of her supervisory responsibilities and assigned her to a single pool in Foster Park. (*Pl.St.* ¶ 17). In a memorandum dated August 12, 2002, the Park District informed plaintiff that her work was unsatisfactory, that she challenged management at meetings, and failed to discipline staff when directed. (*Pl.St.*, Ex. L). The memorandum called plaintiff's behavior and actions "unacceptable" and informed her she was being transferred immediately. (*Id.*). It further informed her that her performance would be reviewed in three months and if it was not satisfactory, she would be suspended or terminated. (*Id.*).

Curiously, the Park District contends that this was not a disciplinary action, but merely a transfer due to seasonal staffing needs. (*Defendant's Response to Plaintiff's Local Rule 56.1 Statement*, ¶¶ 16-17). It does not discuss the issue in its opening or reply briefs, but merely denies that the transfer was

6

disciplinary in its Local Rule 56.1 response. The evidence it offers in support of this characterization, however, especially in light of the formal memorandum, is unconvincing. According to the testimony of Mr. Anderson, the transfer would not have occurred "if all [plaintiff] was doing was arguing at the meetings." (*Def.St.*, Ex. E, Anderson Dep. at 35-36). Similarly, Mr. Fischer testified that plaintiff was transferred to the single pool location because she was not performing her job satisfactorily, although he did not know whether he would term the move "disciplinary." (*Def.St.*, Ex. J, Fisher Dep. at 48). He did add, however, that the location for the transfer was chosen based upon staffing requirements. (*Id.* at 47). In any event, after three weeks at Foster Park, plaintiff was assigned to the pool at the Agricultural High School in Gage Park. (*Def.St.* ¶ 11; *Pl.Rsp.* ¶ 11). Plaintiff complains of this assignment as well, claiming it was discriminatory because it involved evening hours, and she preferred working days while her children were at school. (Plaintiff's Dep. at 56).

At about that same time, the plaintiff's son had broken his leg and was in a full leg cast. On September 3, 2002, plaintiff requested ten days of leave to care for her son, attaching hospital paperwork to her request. (*Def.St.*, ¶ 35; *Pl.St.* ¶ 1, Ex. D). She mentioned that she might need additional time off, depending on her son's progress by the 15th of September. (*Id.*). The Park District granted her request by letter on September 10, 2002, and informed her that if she needed additional time off, she would have to request it and provide appropriate documentation. (*Def.St.*, ¶ 35; *Pl.St.* ¶ 1, Ex.). Plaintiff did request additional leave, in two separate letters: one to Mary Savia dated September 12, 2002; one to Jamie Anderson dated September 16, 2002. (*Pl.St.* ¶¶ 3-5). In support of her requests, the plaintiff submitted medical documentation in the form of a physician's note. (*Pl.St.* ¶ 6, Ex. C). She also indicated that she would be able to work between the hours of 9:00 a.m. and 2:00 p.m. while her son was at school. (*Id.*).

7

According to the plaintiff, the Park District denied these requests, and informed her that if she did not return when her leave expired, she would be subject to disciplinary action. (*Pl.St.* ¶¶ 7-8).

The Park District does not dispute that plaintiff was entitled to the leave requested, but submits that the letters did not amount to "formal requests for FMLA leave," and that the medical documentation she provided did not constitute substantiation for FMLA purposes. (*Def.Rsp.* ¶¶ 3-6). While the Park District does not exactly dispute that it denied plaintiff's requests, it does question whether the evidence that plaintiff has submitted – time sheets demonstrating that plaintiff worked on September 12, 10-15, and 21-23 – support that her request was denied. (*Def.Rsp.* ¶¶ 7-8).

It was also during this time, September of 2002, that plaintiff formally requested a demotion from her position of natatorium instructor to that of lifeguard. (*Def.St.* ¶ 21; *Pl.Rsp.* ¶ 21). In a letter to Mr. Anderson dated September 16, 2002, she referenced "many telephone conversations" and "a few personal appeals to Mr. Eric Fisher" and asked Mr. Anderson "to consider [her] plea to demote [her] to the position of Lifeguard and assign [her] to Ridge Park." (*Pl.St.*, Ex. N). Plaintiff explained that "her request was based on [her] personal needs to be close to home and not away from [her] family every night of the week," (*Id.*). She indicated that Ridge Park would be her preferred location, as she was familiar with the programs there and the children in those programs. (*Id.*).

On March 23, 2003, the plaintiff wrote another letter, this time to Mr. Fisher requesting a "transfer of job responsibilities." (*Pl.St.*, Ex. O). She asked to be reassigned to the Ridge Park junior lifeguard program and to remain at South Shore Beach during the day. (*Id.*). She also indicated she would be happy to work at any one of several locations on Chicago's south side. (*Id.*). Her request was premised on her no longer being able to meet the increased time demands of her pool supervisor position. (*Id.*).

8

On June 27, 2003, the Park District granted plaintiff's request for a demotion to lifeguard. (*Def.St.* ¶ 21; *Pl.Rsp.* ¶ 21; *Pl.St.*, Ex. P). It assigned plaintiff to the South Shore Beach location for the hours of 9:00 a.m. to 3:00 p.m. Monday through Thursday. (*Pl.St.*, Ex. P). As a result, the plaintiff suffered an income loss, but the demotion was pursuant to her request. (*Def.St.* ¶ 24; *Pl.Rsp.* ¶ 24). In granting plaintiff's request, however, the Park District noted that it need not honor any such transfer requests under the terms of the collective bargaining agreement. (*Pl.St.* ¶ 36, Ex. O; *Def.Rsp.* ¶ 36). The applicability of this collective bargaining agreement stems from plaintiff's membership in the Service Employees International Union ("SEIU"). (*Def.St.* ¶ 7; *Pl.Rsp.* ¶ 7). There is no dispute that the terms of the agreement allow the Park District to transfer lifeguards according to its staffing needs. (*Def.St.* ¶ 8-9; *Pl.Rsp.* ¶ 8-9).

## ANALYSIS

### I.
### SUMMARY JUDGMENT PRINCIPLES

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2006); *Ballance v. City of Springfield, Illinois Police Dept.*, 424 F.3d 314 (7th Cir.

2005).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. But there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* at 324. The burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case. *Id.*

The critical point – and the one often forgotten – is that summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. *Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2006); *Rozskowliak v. Village of Arlington Heights*, 415 F. 3d 608, 612 (7th Cir. 2005). In that situation, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23. *See also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739 (7th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Matsushita Electric Industries v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But, neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at

10

247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, is sufficient to defeat a motion for summary judgment. *McGuire v. United Parcel Service*, 152 F.3d 673, 676 (7th Cir. 1998); *Mills v. First Federal Savings & Loan Ass'n. Of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50; *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1210 (7th Cir 1993). Inferences that are supported only by speculation or conjecture will not defeat a summary judgment motion. *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739 (7th Cir. 2005); *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 463 (7th Cir. 2005); *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In a summary judgment context, the judge must ask not whether the evidence unmistakably favors one side or the other, but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 726 (7th Cir. 2005); *Durkin v. Equifax Check Services*, 406 F.3d 410, 414 (7th Cir. 2005).

## II.
## THE PARK DISTRICT HAS FAILED ON THE PRESENT BRIEFING TO ESTABLISH ENTITLEMENT TO SUMMARY JUDGMENT ON COUNT I

Count I alleges that the Park District discriminated against the plaintiff because of her gender by treating her differently than it did male lifeguards in violation of Title VII. More specifically, she claims that the Park District reprimanded her, took away her supervisor duties, and transferred her to a less desirable work location because she had requested better work hours and work location and failed to discipline her staff. (*Complaint*, ¶¶ 10-12). She claims that male lifeguards were not disciplined for similar actions. (*Complaint*, ¶ 13). The Park District argues that the plaintiff cannot show that she was treated less

11

favorably than similarly situated male employees because she cannot demonstrate that she was subjected to an adverse employment action. (*Defendant's Memorandum in Support of Its Motion for Summary Judgment*("*Def. Mem.*"), at 5).

But in so doing, as already suggested, the Park District ignores the plaintiff's allegations and asserted facts, choosing instead to articulate and then defeat its own version of plaintiff's Title VII claim. The result is that a truly informed decision regarding whether there is a genuine issue of fact regarding plaintiff's Title VII cannot be made. Accordingly, the Park District's motion shall be denied as to plaintiff's Title VII claim, subject to further briefing described below.

Title VII prohibits employers from discriminating against employees on the basis of sex or gender. 42 U.S.C. § 2000e-2(a)(1). Claims of discrimination under Title VII for disparate treatment can be proven either through direct or indirect evidence. *Farrell v. Butler University*, 421 F.3d 609, 612-613 (7th Cir. 2005). Here, the plaintiff proceeds under the *McDonnell Douglas* indirect evidence method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this method, the plaintiff bears the initial burden of establishing a *prima facie* case. *Id.* at 802; *Farrell*, 421 F.3d at 613. To make out a *prima facie* case of "disparate treatment" gender discrimination under Title VII, a female plaintiff must show that she: (1) is a member of a protected class, (2) is performing her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated less favorably than at least one similarly-situated male colleague. *Farrell*, 421 F.3d at 613. Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802; *Farrell*, 421 F.3d at 613.

If the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the

12

defendant's explanation was pretextual. *Farrell*, 421 F.3d at 613. This showing requires more that simply demonstrating that the defendant's decision was "mistaken, ill considered or foolish . . ." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir.2000). Instead, pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir.2000). As long as the employer honestly believed its reasons for its employment action, pretext has not been shown. *Farrell*, 421 F.3d at 613; *Jordan*, 205 F.3d at 343.

Here, in an exceedingly brief presentation, the Park District argues that plaintiff cannot establish a *prima facie* case because she did not suffer any adverse employment action. According to the Park District, the plaintiff:

> fails to point to any demotion in her title, – *other than at her own request*. All she can point to is a change in location which she admits was a regular occurrence as a part of her employment with the Chicago Park District and under her union contract.

(*Def.Mem.* at 5 (emphasis in original)). This, quite literally, is the sum and substance of the Park District's argument. Aside from setting forth the familiar *McDonnell Douglas* burden-shifting rules, the Park District confines its argument for summary judgment on plaintiff's Title VII claim to seven sentences spread across its opening and reply memoranda. Such an unadorned, and seemingly half-hearted, request for summary judgment hardly warrants consideration. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005)(court need not scour record to locate support for party's argument; perfunctory or undeveloped arguments are waived). This is especially the case here, where it is the Park District that bears the burden of demonstrating it is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323; *Outlaw*, 259 F.3d at 837.

The Park District's failure to expound, at any length, on its position leaves open to speculation

13

which employment actions its motion for summary judgment covers. There was, of course, a demotion at plaintiff's request. That occurred in June of 2003 but, according to plaintiff's complaint and response to the Park District's motion for summary judgment, that is not the disciplinary action of which plaintiff complains. Instead, plaintiff bases her Title VII claim on the transfer that occurred in the late summer of 2002. (*Complaint*, ¶¶ 11-12; *Plaintiff's Response in Opposition to Defendant's Motion*, at 3-4). That was the transfer to the Foster Park location, which also involved plaintiff losing her supervisory responsibilities. It is a transfer that the Park District does not discuss at any length in its opening or reply memoranda.

The Park District can arguably be said to refer to the Foster Park transfer, although certainly not specifically, insofar as it submits that changes in location were a part of plaintiff's employment under the collective bargaining agreement. But the evidence suggests that this was not merely the lifeguard transfer the Park District seeks to characterize it as. This particular change in location included a diminishment in job responsibilities, which can be considered an adverse employment action under some circumstances. *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 904 (7th Cir. 2005)(adverse employment action might be indicated by significantly diminished material responsibilities); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1029 (7th Cir. 2004)(same). The plaintiff went from supervising several lifeguards at multiple pool locations to simply being a lifeguard at one pool with no supervisory responsibilities. The Park District does not argue that the loss of a supervisory role cannot constitute an adverse employment action. Indeed, it appears disinterested in this count of plaintiff's complaint: it does not address the issue of adverse employment action at all, citing no cases regarding what does, or does not, constitute an adverse employment action. Such a lackadaisical effort can hardly be regarded as meeting the Park District's

14

burden of establishing it is entitled to summary judgment on plaintiff's Title VII claim.

With even less exposition that it employs in support of its adverse employment action argument, the Park District states, in a single sentence, that the plaintiff's *prima facie* case also fails because she can point to no similarly situated male employees who were treated more favorably. (*Def.Mem.* at 5). In fact, in her Local Rule 56.1 submissions, the plaintiff points to two male employees, Robert Cherry and Martin Ramirez, who were not similarly disciplined for disagreements about "writing up" staff members. (*Pl.St.* ¶¶ 20-24). The plaintiff argues these facts in her brief. (*Plaintiff's Response in Opposition to Defendant's Motion*, at 5). The Park District does not address this issue in either of its briefs. It merely objects, in its Local Rule 56.1 response, that these were isolated examples and have no relevance. (*Def.Rsp.* ¶¶ 20-24). The Park District fails to either explain this objection or properly support it with citations to the record.[3] Unamplified statements by lawyers in briefs do not count. *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003); *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Consequently, for the purposes of its summary judgment motion, the Park District is deemed to have admitted the plaintiff's factual (not, of course, legal) assertions regarding Mr. Cherry and Mr. Ramirez. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(Local Rule requires specific citations to the record to support denials of asserted facts).

The plaintiff's reference to Mr. Cherry and Mr. Ramirez is supported by citation to the record: the testimony of Mr. Fischer. (*Pl.St.* ¶¶ 20-24, *citing* Ex. J). Mr. Fischer testified that there had been "a few"

---

[3] The Park District's "isolation" objection, unexplained as it is, is certainly curious given the fact that plaintiff need only show that she was treated differently than *one* similarly situated male colleague. *Farrell*, 421 F.3d at 613. Either Mr. Cherry or Mr. Ramirez, "isolated" though they may be, would seem to qualify.

employees who had bridled at being directed to issue reprimands, and specifically recalled Mr. Cherry and Mr. Martinez. (Fischer Dep., at 41). According to Mr. Fischer, Mr. Cherry initially refused to issue a reprimand when ordered to do so, but eventually did and was not disciplined. (Fischer Dep., at 41-42). Mr. Ramirez initially refused, was written up, and only then relented. (Fischer Dep., at 42-43). As a result, the write-up was removed from his file. (Fischer Dep., at 43-44). Neither man was transferred as a disciplinary measure. (Fischer Dep., at 41-44).

The plaintiff was offered a similar opportunity to relent, but chose not to, and added a written rebuttal. Thus, perhaps the two male lifeguards were not "similarly situated," because they did not add a "rebuttal" to the reprimands they eventually submitted. The issue, however, is lost on the Park District which leaves this portion of plaintiff's case unaddressed, both legally and factually. As a consequence, the Park District's motion for summary judgment on plaintiff's Title VII claim is, essentially, unfinished. The Park District is not entitled to summary judgment as things stand. The Park District, however, is given thirty days from the date of this opinion, if it chooses, to file new briefs directed to the following questions:

- Is the plaintiff "similarly situated" to the male employees who initially refused to issue the reprimands within the meaning of Title VII?

- Has the plaintiff satisfactorily performed her job within the meaning of Title VII in light of the claim of "unacceptable behavior" as set forth in the letter of 8/12/02?

- Was the plaintiff's transfer to Foster Park an "adverse employment action?"

- Is there record evidence that the plaintiff was transferred to Foster Park because of claimed insubordination rather than because of her gender?

If the Park District chooses to stand on the present record, it may do so. If it chooses to file an additional brief directed to these issues, Ms. Donnelly shall have thirty days to respond and the Park District

16

shall have fourteen days thereafter to reply.

## III.
## THE PARK DISTRICT IS ENTITLED TO SUMMARY JUDGMENT
## ON THE BREACH OF CONTRACT CLAIM

Under Count II of her complaint, the plaintiff alleges that the Park District breached its "express employment contract" with plaintiff, by which it agreed "that employees would be judged on the basis of individual merit and ability." (*Complaint*, ¶¶ 20, 22, 23). The terms of this contract, according to plaintiff, were set out in "personnel policies and procedure manuals." (*Complaint*, ¶ 20). Plaintiff alleges that the Park District breached this "procedure manual" contract when it demoted and transferred her to a less desirable position, and denied her request for leave. While employee manuals and handbooks may, in some circumstances, constitute enforceable contracts under Illinois law, *see Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 490, 505 N.E.2d 314, 318 (1987), the circumstances here dictate otherwise.

At her deposition, plaintiff admitted that she had no individual employment contract with the Park District. (Plaintiff's Dep. at 61). It is undisputed that, because the plaintiff is a member of the SEIU, Local 73, her contractual relationship with the Park District is governed by that union's collective bargaining agreement with the Park District. (*Def.St.* ¶ 7; *Pl.Rsp.* ¶ 7); *see* Illinois Public Labor Relations Act, 5 ILCS 315/1 *et seq.*(governing the organization and collective bargaining of Illinois' public employees).[4] As such, the collective bargaining agreement constituted plaintiff's express employment contract. In such

---

[4] In *Searcy v. Southeastern Pennsylvania Transp. Authority*, No. 96-3854, 1997 WL 152791, *4 (E.D.Pa. March 27, 1997), the court, pointing to Pennsylvania's analogous Public Employee Relations Act, found that an employee who was subject to a collective bargaining agreement was prevented her from entering into a separate employment contract.

an instance, an employee handbook or policy statement cannot override or modify the clear and unambiguous terms of an express employment contract. *McWhorter v. Realty World-Star, Inc.*, 171 Ill.App.3d 588, 593-94, 525 N.E.2d 1205, 1208 (5th Dist. 1988); *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1345 (7th Cir. 1995). Thus, as the Park District suggests, the provisions of the collective bargaining agreement control the terms of the plaintiff's employment relationship with the Park District. She cannot maintain a claim for the breach of contract based upon a procedural manual.

Apparently realizing she had no breach of contract claim as she originally fashioned it, plaintiff reshaped her allegations in her response to the Park District's motion for summary judgment. In so doing, she also realized that she had to get around the terms of the collective bargaining agreement, because that agreement specifically provides that the Park District may transfer lifeguards from pool to pool according to its staffing needs. (*Def.St.* ¶ 8-9; *Pl.Rsp.* ¶¶ 8-9). So, in the new version of her breach of contract claim, she alleged that she had an implied contract with the Park District regarding the demotion she requested: she wanted a demotion only if it meant she would be transferred to her choice of pool location. According to the plaintiff, she

> conditioned her demotion on being transferred to Ridge Park so that she could continue to work with the Junior Lifeguard Program. She repeatedly stressed this offer to the [Park] District in letters and conversations with the [Park] District. The [Park] District accepted her offer and received the benefit of a highly trained employee who they would have to pay $2.26 less an hour. Upon its acceptance, however, the [Park] District created an inequity between itself and [plaintiff]. It received all of the benefits while [plaintiff] received no benefit since the [Park] District transferred her to the South Shore Cultural Center. By failing to transfer [plaintiff] to Ridge, the [Park] District breached its implied contract with her.

(*Plaintiff's Response in Opposition to Defendant's Motion*, at 7(citations omitted)).

Thus, instead of arguing that the Park District breached a contract expressed in an employee

18

manual – the type of contractual claim alleged in her complaint and acknowledged in *Duldulao* – the plaintiff argues the Park District breached some other implied agreement not found in the manuals or in the collective bargaining agreement. This is a very different claim than that which the plaintiff pled in her complaint. Plaintiff has abandoned the claim found in her complaint and manufactured another in her response memorandum. It is well-settled, however, that a plaintiff may not amend her complaint through arguments in a brief in opposition to a motion for summary judgment. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996). Accordingly, plaintiff may not employ her newly-minted "implied contract" claim to stave off the Park District's motion for summary judgment as to Count II.

Even if plaintiff had properly set forth her breach of contract claim, it is clear that it is unsupportable based on this record. The manner in which plaintiff characterizes her "offer" to the Park District is not entirely accurate. First and foremost, it was not an "offer" but, in plaintiff's own terms, a "plea." (*Pl.St.*, Ex. N). Aside from that, plaintiff's concerns were not limited to being assigned to Ridge Park.

She wanted to work only daytime hours when her children were in school. (*Pl.St.*, Exs. N; O). The Park District granted this request by assigning her to a shift from 9:00 to 3:00 p.m. Monday through Thursday. (*Pl.St.*, Ex. P). She wanted to be assigned to a pool close to home, and while she expressed a preference for Ridge Park (*Pl.St.*, Exs. N; O), she also mentioned South Shore Beach. (*Pl.St.*, Ex. O). In fact, at her deposition, she testified that she had requested a location "somewhere south of Archer Avenue ..." (Plaintiff's Dep. at 23). While the Park District did not give her her first choice – it was not required to under the collective bargaining agreement – it did assign her to a south side location, and one she had mentioned: South Shore Beach. (*Pl.St.*, Ex. P). Finally, the plaintiff indicated that she was

19

interested in remaining with the same children that she had become involved with in the junior lifeguard program. (*Pl.St.*, Exs. N; O). According to the testimony of Mr. Anderson, the children from the Ridge Park program went to South Shore Beach during the summer, so plaintiff would be working with the same children. (Anderson Dep. at 47).

Plaintiff, then, got nearly everything she wanted save for an exact location, but filed a lawsuit anyway. To allow such a claim, which would require the court to parse the plaintiff's fondest hopes and preferences with her minor disappointments and inconveniences would truly render the court a "super personnel board." *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7ᵗʰ Cir. 2005)("As has been regurgitated *ad nauseum* [sic], this Court is not a 'super personnel review board' that second-guesses an employer's facially legitimate business decisions.").[5] Summary judgment is clearly appropriate on this claim.

# IV.
# THE PARK DISTRICT HAS FAILED TO ESTABLISH ITS ENTITLEMENT
# TO SUMMARY JUDGMENT ON THE FMLA CLAIM

In Count III of her complaint, the plaintiff alleges that the Park District denied her request for leave under FMLA. The Family and Medical Leave Act of 1993 ("FMLA" or "Act") entitles eligible employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including the onset of a "serious health condition" in an employee's spouse, child, or parent. 29 U.S.C. § 2612(a)(1)(C). The Act creates a private right of action to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction," § 2617(a)(2), should

---

[5] The suspicion is that plaintiff manufactured this implied employment contract claim in the realization that she could not address her disappointments regarding her *requested* demotion as adverse employment actions under Title VII. *See Griffin v. Potter*, 356 F.3d 824, 829 (7ᵗʰ Cir. 2004)(change in work location that lengthened commute, and changed shift not adverse employment actions); *Grube v. Lau Industries Inc.*, 257 F.3d 723, 728 (7th Cir.2001) (altered work hours not adverse employment action)

20

that employer "interfere with, restrain, or deny the exercise of" FMLA rights, § 2615(a)(1); *See Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 724-25 (2003). Under the statute, an employer may require that a request for such leave "be supported by a certification issued by the health care provider of the . . . son . . . . The employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613.

The Park District argues that it is entitled to summary judgment on this claim because it granted plaintiff ten days of leave and she was not subjected to any adverse employment action upon her return. (*Defendant's Memorandum in Support of Its Motion for Summary Judgment*, at 6; *Reply Brief in Further Support of Defendant's Motion*, at 5). But plaintiff's claim goes beyond the ten days the parties agree that the Park District granted plaintiff, and has nothing to do with whether plaintiff suffered any adverse employment actions upon her return to work. Under the FMLA, a plaintiff is not limited to pursuing a cause of action for discrimination or retaliation, but may maintain a claim for interference with or denial of leave. *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005). Contrary to the Park District's characterization, the plaintiff's claim is that the Park District denied *additional* requests for leave. The Park District's motion and supporting memoranda, however, do not address these additional requests for leave.

As the party moving for summary judgment, the Park District carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (1986); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 1998). It can discharge this burden by " 'showing'– that is, pointing out to the district court – that there is an

21

absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *Outlaw*, 259 F.3d at 837. Here, the Park District has failed to address plaintiff's claim that she was denied additional leave and has, instead, attacked the non-existent claim that she was discriminated against when she returned to work. Having failed to even acknowledge the actual claim that is pending before the court, the Park District has clearly failed to meet its initial burden of demonstrating the absence of a genuine issue of fact, and has not established that it is entitled to summary judgment as to plaintiff's FMLA claim.

Some initial confusion over the plaintiff's FMLA claim is perhaps understandable as she merely alleged she was denied leave. But the exact nature of plaintiff's claim – the denial of her additional leave requests – was clear when plaintiff responded to the Park District's motion for summary judgment. Rather than address this in its reply memorandum, the Park District merely reproduced the terse, three-sentence argument from its opening brief word for word; the argument that plaintiff was granted ten days of leave and was not discriminated against when she returned to work. (*Defendant's Memorandum in Support of Its Motion for Summary Judgment*, at 6; *Reply Brief in Further Support of Defendant's Motion*, at 5).

In September of 2002, plaintiff requested ten days of leave to care for her son. (*Def.St.*, ¶ 35; *Pl.St.* ¶ 1). The Park District granted her request by letter on September 10, 2002, and informed her that if she needed additional time off, she would have to request it and provide appropriate documentation. (*Def.St.*, ¶ 35; *Pl.St.* ¶ 1). Plaintiff did request additional leave, in two additional letters: one to Mary Savia dated September 12, 2002, and one to Jamie Anderson dated September 16, 2002. (*Pl.St.* ¶¶ 3-5). In support of her request, the plaintiff submitted medical documentation in the form of a physician's note. (*Pl.St.* ¶ 6). According to the plaintiff, the Park District denied these requests, and informed her that

22

if she did not return when her leave expired, she would be subject to disciplinary action. (*Pl.St.* ¶¶ 7-8).

As already noted, the Park District does not develop its argument for summary judgment on plaintiff's FMLA claim, nor cite any cases to support its position. In the scant three sentences it devotes to the topic in its opening brief – reproduced verbatim in its reply brief – it submits only that it did not deny plaintiff's original request for leave. The only semblance of an argument to be found is the Park District's suggestion in its Local Rule 56.1 submissions that the plaintiff did not submit a formal request for leave or support it with the required medical documentation. There, although it does not dispute that plaintiff was entitled to the leave requested, it submits that her letters did not amount to "formal requests for FMLA leave" and that the medical documentation she provided did not constitute substantiation for FMLA purposes. (*Def.Rsp.* ¶¶ 3-6). Neither assertion is supported by citation to the record. In addition, both are essentially legal arguments that have no place in a rule 56.1 submission and need not be considered. *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Even if these legal arguments had been appropriately advanced and were to be considered, neither is developed or supported by citation to case law. Like its argument for summary judgment on plaintiff's Title VII claim, then, the Park District's argument for summary judgment on plaintiff's FMLA claim is perfunctory, conclusory, and undeveloped, and need not be considered. *See Estate of Moreland*, 395 F.3d at 759. As with its Title VII argument, however, I will briefly address so much of the Park District's position as can be gleaned from its submissions

As to whether plaintiff's letters constituted "formal requests," the Park District's position can only be guessed at because the Park District chose not to express it. Under the FMLA, an employee need only request leave related to a serious health condition; she is not required to make a specific reference to the

23

FMLA. *See* 29 C.F.R. §§ 825.302(c), 825.303(b); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008

(7th Cir.2001); *Stoops v. One Call Communications*, Inc., 141 F.3d 309, 312 (7th Cir.1998); *Price v.*

*City of Fort Wayne,* 117 F.3d 1022, 1025-26 (7th Cir.1997). The plaintiff's requests went beyond this

minimal requirement, as she specifically mentioned the FMLA in her September 16th letter. (*Pl.St.*, Ex.

B). In addition, she supported her request with a note from her son's physician explaining the boy's

condition. Again, that would seem to be an adequate "certification" under the statute. *See* 29 U.S.C. §

2613. Why it might not be adequate for the Park District's purposes is a matter of speculation. And

speculation certainly does not discharge its burden of establishing its entitlement to summary judgment.

## CONCLUSION

For the foregoing reasons, the motion of the defendant Chicago Park District for summary judgment

[# 21] is GRANTED in part and DENIED in part.

**ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/24/06

24